REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

Joshua Koltun (Bar No. 173040)
Attorney
1 Sansome Street
Suite 3500, No. 500
San Francisco, California 94104
Telephone: 415.680.3410
Facsimile: 866.462.5959
joshua@koltunattorney.com

Attorney for Defendant Roe 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>BORDERLAND BEAT, BLOGGER.COM, GOOGLE LLC, EL SIGLO DE TORREON, NOVENTO GRADOS, CODIGO ROJO NOTICIAS, INFOBAE, EL MANANA, REPORTE NIVEL UNO, OMNI, VALOR TAMAULIPECO REFORMA, EL NORTE, NOTICIAS PV NAYARIT, VANGUARDIA, and ROES 1-50, INCLUSIVE,<br><br>Defendants. | Case No.: 4:20-cv-06822-JD<br><br>DEFENDANT ROE 1's MOTION TO VACATE THIS COURT'S ORDER Re: LEAVE TO PROCEED IN THIS MATTER UNDER A PSEUDONYM (D.E. 6)<br><br>Date: June 24, 2021<br>Time: 10:00 am<br>Court: Webinar/Zoom<br>Judge: The Hon. James Donato<br><br>Filed herewith:<br><br>Declaration of Joshua Koltun<br>Declaration of Roe 1<br>[Proposed] Order<br><br>Filed concurrently:<br>Motion for Judgment on the Pleadings<br>Special Motion to Strike (Anti-SLAPP Motion) |



Joshua Koltun ATTORNEY

*TABLE OF CONTENTS*

MOTION ..................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................................1

SUMMARY ..............................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..............................................................................3

ARGUMENT .............................................................................................................................6

I. Doe has failed to show that he is entitled to proceed under a pseudonym ..........................6

A. A Plaintiff seeking to proceed pseudonymously must show that he will suffer a precise and severe harm if he litigates under his own name, and that such harm outweighs the public interest in knowing the identity of litigants and the prejudice to defendants ......................6

B. Here, the purported harm to Doe – that his enemies would learn that he lived in [REDACTED] – had already occurred when that information was widely published on the internet by the Newspaper Defendants; that bell cannot be unrung. ..........................................................8

C. The public interest in knowing that [REDACTED], outweighs any putative interest Doe has in avoiding harm ..............................................................................................................9

II. Since Defendants did not learn Doe's identity pursuant to a protective order, this Court's Order that they not disclose Doe's identity, or any "identifying information" is an improper "gag order" and an unconstitutional "prior restraint." ..........................................................9

A. "Gag orders" are subject to the heavy constitutional presumption against prior restraints ......9

B. The Order is an improper "gag order," because it prohibits the media from publishing information it already knows and did not learn pursuant to a protective order; moreover the scope of what the media is prohibited from publishing is unclear ..............................11

C. Far from meeting the "heavy presumption" against a prior restraint, Doe cannot even meet the ordinary standard for a preliminary injunction ........................................................12

1. Doe has not shown a likelihood of succeeding on the merits of his claim, namely, that it is "illegal" to decline to "depublish" information that was openly filed in the public docket, once a court places the document containing that information under seal ..............................12



Joshua Koltun ATTORNEY

2. Doe cannot show that he would suffer any irreparable harm if the Defendants publicly discussed the true nature of this lawsuit, because the relevant information was broadly publicized when he was released from prison .......... 13

3. The balance of equities does not support the gag order, as the information he now seeks to conceal became public through his own actions; and any burden on the media's ability to properly report on this lawsuit is an irreparable injury .......... 13

4. The true nature of this lawsuit – that a notorious drug lord is seeking to use this Court to punish the media for reporting on cartel activities – is of great public interest .......... 14

CONCLUSION .......... 14



Joshua Koltun ATTORNEY

## *TABLE OF AUTHORITIES*

**Cases**

*Alexander v. United States*, 509 U.S. 544, 550 (1993) .......... 9
*Bank Julius Baer & Co. Ltd. v. WikiLeaks*, 535 F. Supp. 2d 980, 985 (N.D. Cal. 2008) .......... 8, 13
*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); .......... 10
*Calabrian Co. v. Bangkok Bank Ltd.*, 55 F.R.D. 82 (S.D.N.Y. 1972) ("Once the cat is out of the bag, the ball game is over.") .......... 8, 13
*Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1142, 1467-47 (2012) .......... 9, 14
*Columbia Broad. Sys., Inc. v. U.S. Dist. Ct.*, 729 F.2d 1174, 1177 (9th Cir. 1984) .......... 10
*Cross v. Cooper*, 197 Cal. App. 4th 357, 366, 378 (2011) (statement that plaintiff was a registered sex offender was of public interest); .......... 9, 14
*Cullem v. Ziev*, 2021 U.S. Dist. LEXIS 26007, at *8-9 (D. Mass. Feb. 10, 2021). .......... 11
*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) .......... 7
*Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) .......... 14
*Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 & n.11 (2d Cir. 2004) .......... 8, 13
*In re Charlotte Observer*, 921 F.2d 47, 49-50 (4th Cir. 1990) .......... 10
*Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 259 (1974) .......... 10
*Near v. Minnesota ex rel. Olsson*, 283 U.S. 697, 716 (1931) .......... 10
*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 562 (1976) .......... 10
*New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (*per curiam*) .......... 10, 13
*Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) .......... 8, 13
*Okla. Publ'g Co. v. Dist. Ct.*, 430 U.S. 308, 311-12 (1977) .......... 10
*Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974-75 (9th Cir. 2002). .......... 14
*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 28, (1984) .......... 11
*United States v. First Nat'l City Bank, 379 U.S.* 378, 383 (1965) .......... 14
*United States v. Hiramanek*, 2017 U.S. Dist. LEXIS 198227, at *7-8 (N.D. Cal. Nov. 30, 2017) .......... 7, 8
*United States v. Kaczynski*, 154 F.3d 930, 931-32 (9th Cir. 1998) .......... 7
*United States v. Quattrone*, 402 F.3d 304, 313 (2d Cir. 2005) .......... 10
*Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) .......... 12



Joshua Koltun ATTORNEY

### *MOTION*

TO PLAINTIFF JOHN DOE AND HIS COUNSEL OF RECORD: PLEASE TAKE NOTICE that on June 24, 2021, at 10:00 a.m., or as soon thereafter as counsel may be heard, by Zoom/Webinar as indicated on the Court's website or as otherwise ordered by the Court, Defendant Roe 1 ("Roe") will respectfully move that this Court vacate its Order Re: Leave to Proceed in this Matter Under A Pseudonym (DE 6, hereinafter "Pseudonym Order". This motion is based upon the Memorandum of Points and Authorities that follows, on the Declarations of Joshua Koltun and Roe 1, all submitted herewith, on all the pleadings, records and files in this case, and on such further material and argument as may be submitted at or before the hearing on this motion.

### *MEMORANDUM OF POINTS AND AUTHORITIES*

### *SUMMARY*

Plaintiff "John Doe" [redacted]

Borderland Beat, named as a defendant, is a widely-followed blog that reports on the activities of Mexican drug cartels. Roe Decl., ¶ 1. It does not have any corporate entity. Persons who post articles on the blog, many of whom live in Mexico, and others associated with the blog, do so

Joshua Koltun ATTORNEY

anonymously. *Id.* Reporters in Mexico and elsewhere who report on drug cartels live in well-founded fear for their own safety. *Id.* The Complaint names as defendants Roes 1-25, arising from their association with Borderland Beat ("Borderland Beat Defendants"). Defendant Roe 1 ("Roe") is a person that has certain administrative rights concerning the Borderland Beat blog. *Id.* The remaining named defendants ("Newspaper Defendants") are Spanish-language newspapers, all but one of which is published outside the United States. Complaint, ¶ 10-14.

This case arises from an article published on Borderland Beat ("Article") that summarized information that was widely reported in the Spanish-speaking world by the Newspaper Defendants, and there is no contention in this case that the information was false. [redacted]

The Complaint states a variety of federal and state claims against Borderland Beat and the Borderland Beat defendants, the merits of which are addressed in the Motion for Judgment on the Pleadings (federal claim) and Anti-SLAPP motion (state claims) filed concurrently.

Concurrently with filing the Complaint, Doe moved *ex parte*, and obtained, an order from this Court that allowed him to proceed pseudonymously, and which ordered the Defendants not to disclose Doe's identity or any "identifying information" concerning him.

Roe moves to vacate that order.

Doe has not met his burden of showing that he is entitled to proceed anonymously. This Court

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

granted an *ex parte* order based on the unsworn assertions of counsel as to the reasons Doe sought such an order. The Court was not given pertinent information that would have enabled it to understand that Doe's security concerns were the result of his own long criminal career, and that in any event that, under the circumstances, granting the order would do nothing to alleviate Doe's concerns for his safety. Nor was the Court given the necessary information that would have enabled it to understand that there is a strong public interest in knowing that [redacted] was using this Court to silence those who report on drug cartel activities, a public interest that outweighs any interests that Doe might have in hiding his identity.

Moreover, under the circumstances, this Court's order operates as an improper "gag order" and an unconstitutional prior restraint. The Defendants, all of whom are news media who have been reporting on Doe, necessarily know Doe's identity from the circumstances; that is not something that was revealed to them under a protective order. The Court's order that the defendants not disclose Doe's identity – or any "identifying information" concerning Doe – necessarily severely restricts their ability to report on this litigation. That is a prior restraint on speech, against which the constitution imposes the heaviest of presumptions. Far from being able to meet that heavy presumption, Doe cannot even establish that he is entitled to the Order under the ordinary standard for issuance of any preliminary injunction.

***FACTUAL AND PROCEDURAL BACKGROUND***

[redacted]

1 ██████████████████████████████████████████
2 ██████████████████████████████████████████
3 ████████████████
4 ██████████████████████████████████████████
5 ██████████████████████████████████████████
6 ██████████████████████████████████████████
7 ██████████████████████████████████████████
8 ██████████████████████████████████████████
9 ████████████████

Shortly thereafter, on June 23, 2020, Borderland Beat published the Article, which summarized, in English, the information in the Spanish-language newspapers, and discussed ███ ████████████████ Roe Decl., ¶ 1, Exh. 2.[1] ████████████████

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████ In late July
_____
[1] ████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

Joshua Koltun ATTORNEY

- 4 -

Roe 1 Motion to Vacate Order                    4:20-cv-06822 JD

2020, the court issued an order sealing the document, which order is itself under seal, as is Doe's request to seal. *Id.* Doe contends that he thereafter gave "actual or constructive notice" to the Newspaper Defendants of the sealing of the MCR. Complaint, 24; Joint Rule 26(f) Report [DE 19] at 2:15-25. There is no contention that such notice was given to Borderland Beat. Doe did not give Borderland Beat such notice because, at the time, Borderland Beat had already removed certain information in response to a complaint that Doe had made to the Borderland Beat's internet service provider. *Id.*, Decl. Roe, ¶ 5.

[redacted][3]

On September 30, 2020, Doe filed the instant action, asserting causes of action against the Borderland Beat, the Borderland Beat Defendants, and the Newspaper Defendants for liability under the federal Driver's Privacy Protection Act, 18 USC § 2724, Negligence, Negligence *Per Se*, Public Disclosure of Private Facts, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress.[4] The Complaint does not identify Doe, nor does it supply any information concerning the factual content of the articles at issue, or why they might be of public interest.

On October 3, 2020, Doe filed an *ex parte* Motion Requesting Leave to Proceed in this Matter under a Pseudonym ("Motion.") D.E. 3. Like the Complaint, the Motion did not disclose to the Court the identity of Doe, nor did it contain any suggestion as to the content of the articles at issue, or why

---

[3] [redacted]

[4] The DPPA claim is against Borderland Beat and the Borderland Beat Defendants only; the Public Disclosure of Private Facts is against the Newspaper Defendants only.

Does' identity, or the information in the articles, might be of public interest. The motion referred, in conclusory fashion, to "private information," and to the purported "illegality of Defendant's failure to de-publish private information after actual notice of its illegality," and asked that Defendants be prohibited from writing articles about the instant litigation that disclosed his identity, or from disclosing his identity to any third party. Motion at 4:9-13, 5:1-14.

The Motion was unaccompanied by any declarations or other evidence, but rather was solely based on the the unsworn assertions of counsel. Counsel asserted that

> Doe has several enemies who may use the private information to track him down and hurt him. Indeed Mr. Doe has had to hire private security to maintain a sense of security due to Defendant's publications. … Mr. Doe is vulnerable to such an attack for reasons that cannot be disclosed in a public filing, but should the Court require more can be filed under seal.

On October 5, 2020, this Court (Magistrate Judge Westmore), granted the requested order (D.E. 6, "Order") as follows:

> The Court orders that Plaintiff may proceed under a pseudonym, that Defendants are prohibited from disclosing Plaintiff's identity to any third party unless such disclosure is necessary to defendant against this action (and if so, with a protective order), and any party that publicly files a document identifying Plaintiff shall redact all personal identifying information in accordance with Fed.R.Civ.P. 5.2

## *ARGUMENT*

### *I. Doe has failed to show that he is entitled to proceed under a pseudonym*

#### *A. A Plaintiff seeking to proceed pseudonymously must show that he will suffer a precise and severe harm if he litigates under his own name, and that such harm outweighs the public interest in knowing the identity of litigants and the prejudice to defendants*

As the Court of Appeals for the Ninth Circuit has explained, plaintiffs may be allowed to proceed under pseudonyms in the following circumstances: "(1) when identification creates a risk of retaliatory physical or mental harm, … (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature … (3) when the anonymous party is compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution." *Does I thru*





Joshua Koltun ATTORNEY

*XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (citations and internal quotations omitted).

Since a plaintiff's request to proceed anonymously is contrary to the public's right of access to judicial proceedings and the risk of prejudice to the opposing party, the Ninth Circuit considers the following factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous plaintiff's fears. (3) the anonymous party's vulnerability to such retaliation, (4) the precise prejudice at each stage of the proceedings to the opposing party, (5) whether proceedings may be structured so as to mitigate that prejudice, and (6) whether the public's interest in the case would be best served by requiring plaintiff to reveal his identity. *Id.*, 214 F.3d at 1068-69. [5]

Where "disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case," that counsels against permitting them to proceed anonymously. *Id.* at 1072.

The "retaliatory" harm proposed by the plaintiff must be related to his involvement in the case; it cannot involve potential retaliation by hypothetical persons without any involvement in the proceeding. *United States v. Hiramanek*, 2017 U.S. Dist. LEXIS 198227, at *7-8 (N.D. Cal. Nov. 30, 2017). Moreover, a plaintiff's legitimate privacy interest may be outweighed by the public interest in scrutinizing judicial decisionmaking. *United States v. Kaczynski*, 154 F.3d 930, 931-32 (9th Cir. 1998) (unsealing psychiatric records of criminal defendant (Unabomber), as they were relevant to

---

[5]The standard for determining whether a plaintiff may proceed anonymously is different from the standard where a defendant-speaker (such as Roe 1 or any of the anonymous reporters for Borderland Beat) proceeds anonymously. Unlike a plaintiff who has voluntarily availed himself of judicial processes in order to obtain a judicial remedy, the anonymous speaker-defendant has been involuntarily haled into court, and disclosure of her identity would infringe upon her First Amendment right to speak anonymously.

Thus a defendant seeking to defend a case anonymously need not obtain permission from the Court to do so. On the contrary, a plaintiff seeking disclosure of an anonymous speaker's identity has the burden of showing that his interest in learning the identity of the speaker outweighs the speaker's First Amendment right to anonymity. *See, e.g.*, *Art of Living Found. v. Does*, , 2011 U.S. Dist. LEXIS 129836, at *19-21, * 26-28 (N.D. Cal. Nov. 9, 2011).

Here, the anonymous contributors to the Borderland Beat blog have every reason to be concerned for their safety if their identity were revealed to [REDACTED] such as Doe. Roe Decl., ¶ 4 & Exhs. 7 to 11 (reports of Committee to Protect Journalists concerning dangers to Mexican journalists reporting on drug cartel activity).



Joshua Koltun ATTORNEY

Courts competency determination).

***B. Here, the purported harm to Doe – that his enemies would learn that he lived in [REDACTED] – had already occurred when that information was widely published on the internet by the Newspaper Defendants; that bell cannot be unrung.***

Here, even if it were true, as counsel asserts, that Doe has "enemies" who wish him harm, that circumstance is the natural consequence of his long career as [REDACTED]. It does not flow from his involvement in this case, and thus is not cognizable for this purpose. *Hiramanek,* 2017 US Dist. LEXIS 198227 at * 7-9.

Moreover, his enemies in rival cartels surely learned where he was living when that information was widely reported throughout Latin America in the Spanish-speaking press by the Newspaper Defendants, based on [REDACTED] [REDACTED]

The horse has left the barn. Allowing Doe to proceed under a pseudonym does nothing to alleviate any risk he may face from his "enemies." *See Bank Julius Baer & Co. Ltd. v. WikiLeaks*, 535 F. Supp. 2d 980, 985 (N.D. Cal. 2008) (dissolving injunction after determining that dissemination of allegedly private information had already occurred on Internet and that "the cat [was] out of the bag," such that injunction would be ineffective and would generate further publicity for the confidential information); *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) (court may not restrain the disclosure of information that is already in public domain); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 & n.11 (2d Cir. 2004) ("We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again. . . The genie is out of the bottle. . . . We have not the means to put the genie back."); *Calabrian Co. v. Bangkok Bank Ltd.*, 55 F.R.D. 82 (S.D.N.Y. 1972) ("Once the cat is out of the bag, the ball game is over.").



Joshua Koltun ATTORNEY

***C. The public interest in knowing that [REDACTED], outweighs any putative interest Doe has in avoiding harm***

Assuming *arguendo* that Doe could show that litigating this case under his own name would cause him some severe harm, that harm is outweighed by the public interest in knowing who has filed this case. The Court, when it decided the Motion and Granted the Order, was operating in an absolute vacuum of information as to what public interest there might be in Doe's identity.

[REDACTED] *Cross v. Cooper*, 197 Cal. App. 4th 357, 366, 378 (2011) (statement that plaintiff was a registered sex offender was of public interest); *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1142, 1467-47 (2012) (statement that plaintiff was a "criminal," "deadbeat dad," "into illegal activities" and potentially dangerous were of public interest.).

[REDACTED]

***II. Since Defendants did not learn Doe's identity pursuant to a protective order, this Court's Order that they not disclose Doe's identity, or any "identifying information" is an improper "gag order" and an unconstitutional "prior restraint."***

***A. "Gag orders" are subject to the heavy constitutional presumption against prior restraints***

"The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotation marks omitted;

Joshua Koltun ATTORNEY

emphasis omitted). "Temporary restraining orders and permanent injunctions — *i.e.*, court orders that actually forbid speech activities — are classic examples of prior restraints." *Id.* (internal quotation marks omitted).

The Supreme Court has long emphasized that a request to enjoin protected expression – *i.e.*, a prior restraint – comes to a court with "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *see also New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (*per curiam*). Prior restraints constitute "one of the most extraordinary remedies known to our jurisprudence" and are universally recognized to be "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 562 (1976); *see also Columbia Broad. Sys., Inc. v. U.S. Dist. Ct.*, 729 F.2d 1174, 1177 (9th Cir. 1984) ("the first amendment informs us that the damage resulting from a prior restraint – even a prior restraint of the shortest duration – is extraordinarily grave"). Indeed, there is a "virtually insurmountable barrier" against the issuance of prior restraints on constitutionally protected expression. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 259 (1974) (White, J., concurring). More than eighty years ago the Supreme Court explained that a prior restraint may be imposed only in "exceptional cases," such as the intended publication of the sailing dates of military transports or the number and location of troops in time of war. *Near v. Minnesota ex rel. Olsson*, 283 U.S. 697, 716 (1931) (invalidating gag order against non-parties).

Given that heavy presumption, injunctions against republication of information disclosed in court proceedings are frequently struck down. *See, e.g.*, *Okla. Publ'g Co. v. Dist. Ct.*, 430 U.S. 308, 311-12 (1977) (striking down injunction barring publication of name and photograph of juvenile who appeared at open pretrial proceeding required to have been closed under state law); *United States v. Quattrone*, 402 F.3d 304, 313 (2d Cir. 2005) (striking down order prohibiting publication of names of jurors); *In re Charlotte Observer*, 921 F.2d 47, 49-50 (4th Cir. 1990) (striking down injunction against dissemination of name of grand jury target).

### *B. The Order is an improper "gag order," because it prohibits the media from publishing information it already knows and did not learn pursuant to a protective order; moreover the scope of what the media is prohibited from publishing is unclear*

One situation in which the Supreme Court has indicated that the heavy presumption against prior restraints is met, is the courts power to prevent litigants from disclosing information that they learned in discovery pursuant to a protective order. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 28, (1984).

But that circumstance is not present here. [REDACTED]

This Court's order prohibits them from properly reporting on, or publicly discussing, the true nature of this lawsuit. Under the circumstances, the Order that Defendants not disclose Doe's "identity" or any "personal identifying information" under the circumstances, renders the Court's Order potentially very broad. [REDACTED]

Although the privacy interests of the parties may sometimes justify sealing judicial records, it is not appropriate where the information in question is central to the issues that on which the Court must rule, particularly where the information is such that the public could easily infer it in any event. *Cullem v. Ziev*, 2021 U.S. Dist. LEXIS 26007, at *8-9 (D. Mass. Feb. 10, 2021).



Joshua Koltun ATTORNEY

A prior restraint may be challenged where there is any potential that it might restrict speech, since it "cannot [be] assum[ed] that, in its subsequent enforcement, ambiguities will be resolved in favor of adequate protection of First Amendment rights. … Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *NAACP v. Button*, 371 U.S. 415, 438 (1963).

Here, this Court's broad and vague protective order significantly inhibits the Defendants, all of whom are in the business of reporting on the activities of the Mexican drug cartels, from properly reporting on this lawsuit, which is aimed at penalizing such reporting.

***C. Far from meeting the "heavy presumption" against a prior restraint, Doe cannot even meet the ordinary standard for a preliminary injunction***

Far from being able to meet the heavy presumption against prior restraints, Doe cannot even meet the ordinary standard for obtaining a preliminary injunction. A party seeking a preliminary injunction under that rule must "establish that he is [a] likely to succeed on the merits, [b] that he is likely to suffer irreparable harm in the absence of preliminary relief, [c] that the balance of equities tips in his favor, and [d] that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)

***1. Doe has not shown a likelihood of succeeding on the merits of his claim, namely, that it is "illegal" to decline to "depublish" information that was openly filed in the public docket, once a court places the document containing that information under seal***

Here, Doe has shown no likelihood of success on the merits. This gag order is, at bottom, premised on the assumption that the legal premises of this lawsuit are correct, to wit, that is is "illegal" to decline to "depublish" information that was previously public, once a document containing that information has been sealed by the Court. Motion at 4. But that premise is simply mistaken, as explained in the Anti-SLAPP motion Roe has filed concurrently.

Indeed, even if Doe could show that he is likely to succeed on a claim that the Defendants were liable in ***damages*** for [REDACTED],



Joshua Koltun ATTORNEY

that would not show that he is likely to meet the "heavy burden" of obtaining a prior restraint against publishing such information. To appreciate how heavy the burden is against prior restraints, consider *New York Times v. United States*, in which the government sought to enjoin the publication of an important classified set of documents (the so-called "Pentagon Papers") at the height of the Vietnam War. *Id.*, 403 U.S at 714 (*per curiam*). The Court concluded that the United States had not carried its burden of showing that a prior restraint upon the newspaper was warranted. *Id* . Significantly, this was so even though, as several concurring Justices suggested *in dictum*, the newspaper itself ***might well have been prosecuted*** for the leaks under the Espionage Act. *Id.*, 403 US at 730 (Stewart, J. concurring), 733 (White J concurring), 748 (Marshall, J. concurring).

***2. Doe cannot show that he would suffer any irreparable harm if the Defendants publicly discussed the true nature of this lawsuit, because the relevant information was broadly publicized when he was released from prison***

Doe cannot show that the failure to allow him to proceed under a pseudonym would cause him irreparable harm. Any harm to Doe was caused when the fact that he had moved to [REDACTED] was widely published in the Spanish-language press worldwide. That bell cannot be unrung, and thus there is no basis for an injunction. *See Bank Julius Baer*, 535 F. Supp. 2d at 985; *Nilson*, 45 F.3d at 372; *Gambale*, 377 F.3d at 144 & n.11 *Calabrian Co.*, 55 F.R.D. 82.

***3. The balance of equities does not support the gag order, as the information he now seeks to conceal became public through his own actions; and any burden on the media's ability to properly report on this lawsuit is an irreparable injury***

Nor does the balance of equities support Doe. The information that he seeks to conceal became public through his own actions in filing that information in open court. Any injury Doe suffers is a self-inflicted wound. By contrast, as the Supreme Court repeatedly has recognized, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."



Joshua Koltun ATTORNEY

*Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).[6]

***4. The true nature of this lawsuit – [REDACTED] – is of great public interest.***

Moreover, as explained above in section I.C, the publication of such information here is of great public interest. "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *United States v. First Nat'l City Bank, 379 U.S.* 378, 383 (1965) (citing authorities). The "public interest" factor is separate from the "balancing of the equities," and is designed among other things to protect the interests of nonparties. *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974-75 (9th Cir. 2002).

Here, [REDACTED]. *Cross*, 197 Cal. App. 4th at 378; *Chaker*, 209 Cal. App. 4th at 1467-47. The media have every right to fully report on the true nature of this lawsuit.

***CONCLUSION***

Plaintiff obtained an order from this Court permitting him to proceed pseudonymously and preventing the media (Defendants) from properly reporting on a case of significant public interest. Defendants respectfully suggest that the Court only issued the order because plaintiff had failed to advise the Court of relevant facts. In fact the Order does nothing to prevent the purported harm to plaintiff, which is entirely due to his own actions. Plaintiff has failed to show that he can meet the heavy constitutional burden needed to justify a prior restraint against the media's fully reporting on the true nature of this lawsuit. Roe respectfully urges the Court to vacate the Order.

Dated: May 19, 2021

_____\s________________
Joshua Koltun
Attorney for Defendant Roe 1

---

[6] *Overruled on other grounds by Branti v. Finkel*, 445 U.S. 507 (1980) and *abrogated in part on other grounds by FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990)