Joshua Koltun (Bar No. 173040)
Attorney
1 Sansome Street
Suite 3500, No. 500
San Francisco, California 94104
Telephone: 415.680.3410
Facsimile: 866.462.5959
joshua@koltunattorney.com

Attorney for Defendant Roe 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, | Case No.: 4:20-cv-06822-JD |
| Plaintiff, | DEFENDANT ROE 1's SPECIAL MOTION TO STRIKE |
| v. | (Anti-SLAPP Motion) |
| BORDERLAND BEAT, BLOGGER.COM, GOOGLE LLC, EL SIGLO DE TORREON, NOVENTO GRADOS, CODIGO ROJO NOTICIAS, INFOBAE, EL MANANA, REPORTE NIVEL UNO, OMNI, VALOR TAMAULIPECO REFORMA, EL NORTE, NOTICIAS PV NAYARIT, VANGUARDIA, and ROES 1-50, INCLUSIVE, | Date: June 24, 2021<br>Time: 10:00 am<br>Court: Webinar/Zoom<br>Judge: The Hon. James Donato<br><br>*Filed herewith:*<br><br>Declaration of Joshua Koltun<br>Declaration of Roe<br>[Proposed] Order |
| Defendants. | *Filed Concurrently*<br><br>Motion for Judgment on the Pleadings<br>Motion to Vacate Order Permitting Doe to Proceed Pseudonymously |

## TABLE OF CONTENTS

MOTION ...................................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

SUMMARY ..............................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND................................................................4

ARGUMENT .............................................................................................................................7

I. The Complaint is subject to an Anti-SLAPP motion...................................................7

   A. Roe's initial burden is to show that the Borderland Beat article arose from "an act in furtherance of the defendant's" right to free speech, which is met if the article in question concerned either (i) an "official proceeding" or (ii) an "issue of public interest."...............7

   B. ███████████████████████████████████████, ████████████████████████████████ is both an "official proceeding," and "an issue of public interest."...................................................................................................8

II. Doe cannot show by admissible evidence that Roe is liable for the Article ...............8

   A. Roe cannot be held liable for the content of the Article, which was authored by, and posted to, the Borderland Beat blog by MX. ......................................................................9

   B. Doe has neither stated nor substantiated an actual claim against the author of the Article ......9

      1. Posting an image of Doe's 1990 Drivers License cannot constitute negligence or negligence per se. .......................................................................................................10

      2. The publication of the Article cannot support an emotional distress claim...............11

      3. The publication of the Article is protected by the First Amendment.........................13

CONCLUSION........................................................................................................................14

Joshua Koltun ATTORNEY

## *TABLE OF AUTHORITIES*

**Cases**

*Alvarado v. KOB-TV, L.L.C.,* , 2005 U.S. Dist. LEXIS 45372, at *4-6 (D.N.M. Nov. 14, 2005)...13, 14
*Art of Living Found. v. Does*, 2011 U.S. Dist. LEXIS 129836, at *19-21, * 26-28 (N.D. Cal. Nov. 9, 2011) ..............................................................................................................................10
*Barrett v. Rosenthal*, 40 Cal. 4th 33, 40-41, 62-63 (2006). ...................................................... 7, 9
*Bartnicki v. Vopper*, 532 U.S. 514, 534-35 (2001); ..... 14*Batzel v. Smith,* 333 F.3d 1018, 1020 (9th Cir. 2003); .............................................................................................................................9
*Briggs v. Eden Council for Hope & Opportunity,* 19 Cal.4th 1106, 1114 (1999). ..................................8
*Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1142, 1467-47 (2012) .......................................... 8, 11
*Cross v. Cooper*, 197 Cal. App. 4th 357, 366, 378 (2011) ..................................................... 8, 13
*Dyroff v. Ultimate Software Grp., Inc.*, 2017 U.S. Dist. LEXIS 194524, at *26-28 (N.D. Cal. Nov. 26, 2017). ...............................................................................................................................9
*Enterline v. Pocono Med. Ctr.*,751 F. Supp. 2d 782 (M.D. Pa. 2008)....................................................10
*Florida Star v. B. J. F.*, 491 U.S. 524, 538-89 (1989) ..................................................................13
*IBEW v. Am. Laundry Mach., Inc.*, 2008 U.S. Dist. LEXIS 106893 at *3-4 (S.D. Ohio Sep. 30, 2008). ...............................................................................................................................13
*In re Drasin v. Doe*, , 2013 U.S. Dist. LEXIS 103289, at *6-7 n.3 (D. Md. July 24, 2013) .................10
*In re Subpoena Duces Tecum to America Online, Inc.*, 52 Va. Cir. 26 (Va. Cir. Ct. 2000)...................10
*Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988).............................................................8
*Lowe v. Hearst Communs., Inc.*, 414 F. Supp. 2d 669, 672-75 (W.D. Tex. 2006)..............................13
*Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 n.3 (9th Cir. 2017) ...............................................7
*Manzari v Associated Newspapers, Ltd.,* 830 F.3d 881, 887-88 (9th Cir. 2016)................................7
*Matter of Nanoviricides, Inc. v Seeking Alpha, Inc.*, 2014 N.Y. Misc. LEXIS 2909, 1-2 (N.Y. Sup. Ct. June 26, 2014 ...............................................................................................................10
*McVicker v. King*, 266 FRD 92 (WD Pa 2010) ........................................................................10
*Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990).....8
*Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Ariz.*, 156 F.3d 940, 951 (9th Cir. 1998)......8
*Press-Enter. Co. v. Superior Court of Cal. for Riverside Cty.*, 478 U.S. 1, 13-14, (1986) .....................8
*Rancho Publ'ns v. Superior Court*, 68 Cal. App. 4th 1538, 1541, (1999).............................................10
*Safari Club Int'l v. Rudolph*, 845 F.3d 1250, 1258-60 (9th Cir. 2017)................................................. 7, 9
*Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016). ........................................................... 7, 11
*Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 98 (1979) ......................................................13
*Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1989) .............................................4, 11
*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999).........7
*United States v. Dougherty*, 2014 U.S. Dist. LEXIS 101872 at *7-9 (E.D. Pa. July 23, 2014) ............13
*Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1087 (1999) ......................................................12
*Yelp Inc. v. Superior Court*, 17 Cal. App. 5th 1, 8-9 ....................................................................10

**Statutes**

47 USC §230....................................................................................................................3, 9
California Code of Civil Procedure section 425.16 ......................................................................3, 7
California Vehicle Code section 1808.21 et seq. ..........................................................................10
Drivers Privacy Protection Act, 18 U.S.C. section 2724 et seq. .......................................................10

**Rules**

Fed. R. Civ. P. 65(d), ..............................................................................................................12

## *MOTION*

TO PLAINTIFF DOE AND HIS COUNSEL OF RECORD: PLEASE TAKE NOTICE that on June 24, 2021, at 11:00 a.m., or as soon thereafter as counsel may be heard, by Zoom/Webinar as indicated on the Court's website or as otherwise ordered by the Court, defendant Roe 1 ("Roe") will appear and move the Court under California Code of Civil Procedure section 425.16 to strike the second, third, fifth and sixth causes of action in the Complaint. This motion is based upon the Memorandum of Points and Authorities that follows, on the Declarations of Roe and of Joshua Koltun all submitted herewith, on the Motion for Judgment on the Pleadings and Memorandum of Points and Authorities in Support thereof, and on all the pleadings, records and files in this case, and on such further material and argument as may be submitted at or before the hearing on this motion.

Defendant Roe respectfully requests this Court to strike the Negligence *Per Se,* Negligence, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress claims, as to Roe Defendants 1-25 (i.e. all defendants associated with Borderland Beat, hereinafter "Borderland Beat Defendants,"), for the reasons stated below, and to award reasonable attorney fees in an amount to be determined upon separate motion.

## *MEMORANDUM OF POINTS AND AUTHORITIES*

### *SUMMARY*

[Redacted]

[REDACTED]

Borderland Beat, named as a defendant, is a widely-followed blog[1] that reports on the activities of Mexican drug cartels. Roe Decl., ¶ 1. It does not have any corporate entity. Persons who post articles on the blog, many of whom live in Mexico, and others associated with the blog, do so anonymously. *Id.* Reporters in Mexico and elsewhere who report on drug cartels live in well-founded fear for their own safety. *Id.m* ¶ 5 & Exh. 7-11 (reports of Committee to Protect Journalists on dangers facing Mexican journalists). In addition to Borderland Beat, the Complaint names Roes 1-25 as persons who are in some way liable for the publication by Borderland Beat ("Borderland Beat Defendants"). Defendant Roe 1 ("Roe") is a person that has certain administrative rights concerning the Borderland Beat blog. *Id.* The remaining named defendants ("Newspaper Defendants") are Spanish-language newspapers, all but one of which is published outside the United States. Complaint, ¶ 10-14.

This case arises from an article published on Borderland Beat ("Article") that summarized information that was widely reported in the Spanish-speaking world by the Newspaper Defendants, namely: [REDACTED]

---

[1] Borderland Beat's posts have had more than 75,000,000 page views since 2009. Roe Decl., ¶ 1.

████████████████████████████████████████

By this Motion, Roe seeks to strike all state law causes of action in this case.[2] California Code of Civil Procedure section 425.16 ("Section 425.16"), also known as the "Anti-SLAPP" statute, is available to litigants in Federal Court as to any claim under California law. Section 425.16 applies where the defendant can show that the challenged speech was made in connection with an "official proceeding" or an issue of public interest. Section 425.16(e). Once a defendant does so, plaintiff must state a legally sufficient claim and substantiate it by admissible evidence. Absent such a showing, the court must strike the complaint.

Roe meets the "first prong" of Section 425.16. The Article was manifestly about an official proceeding – ██████████████████. ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. Thus Roe has met her initial burden.

Doe cannot meet his burden to show by admissible evidence that his claims are actionable.

Roe is immunized by Section 230 of the Communications Decency Act, 47 USC §230 ("Section 230"). Section 230 prohibits holding a person liable on any civil claim (other than intellectual property) for any information posted on the internet where that information was provided by another person. Roe is not the person who posted the Article. On the contrary, she is the person who removed the material that Doe found objectionable. Thus she cannot be liable for the Article.

Although Section 230 immunizes Roe, she would also respectfully ask the Court to rule in the alternative that she would not be liable even if she was the author of the article, because Does' claims have no merit as a matter of law. Such a ruling would obviate the need to continue to pursue this case

---

[2] Although Section 230 immunizes Roe on the DPPA claim as well, that claim is not subject to an anti-SLAPP motion. Concurrently, Roe moves to dismiss the DPPA claim by her Motion for Judgment on the Pleadings.

- 3 -

*Joshua Koltun ATTORNEY*

against the anonymous person, MX, who did author the article, and has every reason to fear for her safety from cartels if this case proceeded against her and her identity were disclosed.

Doe's claims for Negligence and Negligence *Per Se* are simply an attempt to import an erroneous premise, purportedly from federal law, that the publication of an image of Doe's driver's license was illegal. But neither the federal law indirectly referenced, or the similar California statute, bar publication of an image of the drivers' license – let alone a 30 year old license. Rather, they bar obtaining certain information directly from the Department of Motor Vehicles ("DMV"), which did not happen here.

Nor can Doe establish Intentional or Negligent Infliction of Emotional Distress. Publication of an image of his 30-year-old drivers license is not so "extreme and outrageous" so as to "exceed all bounds of that usually tolerated in a civilized society." *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1989). Nor is it "outrageous" to publish the fact that Doe was resettling in Atherton or that he suffers from lymphoma, both of which facts he publicly disclosed when he filed that information in open court.

### *FACTUAL AND PROCEDURAL BACKGROUND*

[redacted]

- 4 -

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████

Shortly thereafter, on June 23, 2020, Borderland Beat published the Article, which summarized, in English, the information in the Spanish-language newspapers, and discussed Doe's lengthy and ████████████████. Roe Decl., ¶ 2, Exh.1. The article made the following allegations about Doe, none of which are alleged in this litigation to be false. ███████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████
█████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████
███████████████████████████████████████
██████████
████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

[redacted]

The Borderland Beat article was posted by a person using the pseudonym "MX."[3] Roe, the defendant on this motion, is a person with some administrative rights at Borderland Beat; she is not MX. Roe Decl., ¶ 6.

[redacted] Doe contends that he thereafter gave "actual or constructive notice" to the defendant newspapers of the sealing of the document. Complaint, ¶ 24, Joint Report at 2:15-25. There is no contention that such notice was given to Borderland Beat. *Id.* Doe did not give Borderland Beat such notice because, at the time, Borderland Beat had already removed certain information in response to a complaint that Doe had made to the Borderland Beat's internet service provider. *Id.* The person who removed the information was Roe 1. Roe Decl., ¶ 5.

[redacted]

---

[3] MX also credited "TY 'lechef'" as a co-author, but this person's contribution does not relate to any matter at issue in this case. In any event, Roe 1 is not "TY 'lechef'" either. Roe Decl., ¶ 3.

[redacted] It is entirely appropriate that the documents were available there. Presumably Courtlink, the Lexis-Nexis service that retrieves documents from the publicly available dockets, did so at the time that they were publicly available, as did the Newspaper Defendants. Contrary to Doe's contentions, the publication by the media (or anyone) of information that it lawfully obtained and that is subsequently sealed, is not illegal; indeed the First Amendment bars penalizing such publication. See discussion in section II.C.

Joshua Koltun ATTORNEY

# ARGUMENT

**I.     The Complaint is subject to an Anti-SLAPP motion**

    **A.     *Roe's initial burden is to show that the Borderland Beat article arose from "an act in furtherance of the defendant's" right to free speech, which is met if the article in question concerned either (i) an "official proceeding" or (ii) an "issue of public interest."***

Special Motions to Strike under California Code of Civil Procedure section 425.16 ("Section 425.16," "Anti-SLAPP motions") are available to litigants proceeding in federal court. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999). Section 425.16 was enacted to allow for early dismissal of cases aimed at chilling expression through costly, time-consuming litigation. *Batzel v Smith,* 333 F.3d 1018, 1024 (9th Cir. 2003) Its "burden-shifting mechanism" weeds out lawsuits "brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Manzari v Associated Newspapers, Ltd.,* 830 F.3d 881, 887-88 (9th Cir. 2016) (internal quotation marks omitted).

In the "first prong" of the Anti-SLAPP analysis, defendant must show that plaintiff's suit arises from "an act in furtherance of the defendant's constitutional right to free speech," which is defined to include:

> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, ***executive***, or ***judicial body***, or any other ***official proceeding*** authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an ***issue of public interest***, ***or*** (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with ***a public issue or an issue of public interest***.

Section 426.16(e) (emphasis added). "An issue of public interest" under categories (3) and (4) is defined broadly. § 425.16(e); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 n.3 (9th Cir. 2017); *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016).[5] Moreover, where an "official proceeding"

---

[5] "Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4, (2006); *see also Safari Club Int'l v. Rudolph*, 845 F.3d 1250, 1258-60 (9th Cir. 2017) (posting of video on YouTube satisfied section 425.16(e)(4)).

*Joshua Koltun ATTORNEY*

proceeding under category (2) is concerned, there is no separate requirement that the issue be shown to be "of public interest." *Briggs v. Eden Council for Hope & Opportunity,* 19 Cal.4th 1106, 1114 (1999).

 **B.** ███████ ███████████████ ████████ ██████ **, is both an "official proceeding," and "an issue of public interest."**

██████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████ *Cross v. Cooper*, 197 Cal. App. 4th 357, 366, 378 (2011) (statement that plaintiff was a registered sex offender was of public interest); *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1142, 1467-47 (2012) (statement that plaintiff was a "criminal," "deadbeat dad," "into illegal activities" and potentially dangerous were of public interest.). ████████████████████████████
█████████████████.

## II.  *Doe cannot show by admissible evidence that Roe is liable for the Article*

 Once defendant has met his initial burden under the anti-SLAPP statute, the burden shifts to the plaintiff to "state and substantiate a legally sufficient claim," in other words, he "must

---

█ ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████

demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff[s] is credited." *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1122-23 (9th Cir. 2017) (internal citations omitted).

### A. Roe cannot be held liable for the content of the Article, which was authored by, and posted to, the Borderland Beat blog by MX.

The Communications Decency Act, 47 USC section 230(c)(1) ("Section 230") provides that "[N]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." The effect of Section 230 is that a person who posts to the internet an article that she received from another person is immunized from liability for any civil claim (other than intellectual property) arising from the content of that article, even if the person had notice of the allegedly wrongful nature of the post. *Batzel v. Smith,* 333 F.3d 1018, 1020 (9th Cir. 2003); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 40-41, 62-63 (2006). A person who enables others to contribute anonymously to a website does not thereby lose the immunity of section 230 for the content posted by others. *Dyroff v. Ultimate Software Grp., Inc.*, 2017 U.S. Dist. LEXIS 194524, at *26-28 (N.D. Cal. Nov. 26, 2017).

Here, the article in question was posted to the Borderland Beat blog by a person using the pseudonym MX. Roe Decl., ¶ 6. Roe is not MX, and did not author the content in question. *Id.* On the contrary, Roe's only involvement is to remove the content about which Doe complains. *Id., ¶* 5. Thus Roe is immunized by Section 230.

### B. Doe has neither stated nor substantiated an actual claim against the author of the Article

Although Section 230 immunizes Roe, she would also respectfully ask the Court to rule in the alternative that she would not be liable even if she was the author of the article, because Does' claims have no merit as a matter of law. Such a ruling would obviate the need to continue to pursue this case against the anonymous person, MX, who did author the article, and has every reason to fear for her

- 9 -

safety if this case proceeded against her.[7]

### 1. Posting an image of Doe's 1990 Drivers License cannot constitute negligence or negligence per se.

Doe contends that MX's publication of his 1990 Drivers license constituted negligence or negligence *per se,* because the information came from a "motor vehicle record," or was a "residence address …within the meaning of California Vehicle Code section 1808.21(a). Complaint, ¶¶ 32-41 (Second and Third Causes of Action)

This attempt to leverage federal and state statutes into a common law state negligence claim is without merit. Doe has imported the term "motor vehicle record" from the federal Drivers Privacy Protection Act, 18 U.S.C. section 2724 et seq. ("DPPA"). *See* Complaint, ¶¶ 28-31. Plaintiff misreads the federal statute. The drivers licenses issued by the DMV to drivers are not "motor vehicle records" under the DPPA. *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1255, 1259-62 (9th Cir. 2019). Thus it is not illegal to publish an image of a person's drivers license. The purpose of the DPPA is to prevent people from accessing records that are in the hands of the DMV. *Id.*

---

[7] A media entity may assert third-party standing to assert the free-speech rights of an anonymous contributor. *In re Drasin v. Doe*, , 2013 U.S. Dist. LEXIS 103289, at *6-7 n.3 (D. Md. July 24, 2013) (blogger has standing to defend anonymity of commenters on his blog); *Rancho Publ'ns v. Superior Court*, 68 Cal. App. 4th 1538, 1541, (1999) (anonymous purchasers of protest advertisement); *McVicker v. King*, 266 FRD 92 (WD Pa 2010); *Enterline v. Pocono Med. Ctr.*,751 F. Supp. 2d 782 (M.D. Pa. 2008); *Matter of Nanoviricides, Inc. v Seeking Alpha, Inc.*, 2014 N.Y. Misc. LEXIS 2909, 1-2 (N.Y. Sup. Ct. June 26, 2014); *see also In re Subpoena Duces Tecum to America Online, Inc.*, 52 Va. Cir. 26 (Va. Cir. Ct. 2000)(ISP has standing to assert first amendment rights of its customers); *Yelp Inc. v. Superior Court*, 17 Cal. App. 5th 1, 8-9 (review website has standing to defend anonymous poster of reviews.)
    A plaintiff seeking disclosure of an anonymous speaker's identity has the burden of showing that his interest in learning the identity of the speaker outweighs the speaker's First Amendment right to anonymity. *See, e.g., Art of Living Found. v. Does*, 2011 U.S. Dist. LEXIS 129836, at *19-21, * 26-28 (N.D. Cal. Nov. 9, 2011).
    Here, the anonymous contributors to the Borderland Beat blog have every reason to be concerned for their safety if their identity were revealed to ▓▓▓▓▓▓▓▓▓▓▓ such as Doe. Roe Decl., ¶ 4 & Exh. 7 to 11 (report of Committee to Protect Journalists on dangers facing Mexican journalists).
    There is, no need to engage in factfinding concerning the level of danger facing Mexican reporters on cartel activities, however. If, if Doe cannot present state and substantiate a *prima facie* claim against anyone associated with the Borderland Beat article, there is no basis to strip those reporters of their anonymity, *Art of Living, supra.,* and indeed the Complaint should be dismissed with prejudice.

- 10 -

Roe 1 Special Motion to Strike 4:20-cv-06822 JD

By the same token, the California Vehicle Code section 1808.21 *et. seq.*, like the federal DPPA, only governs the actions of the DMV releasing information in its files to third parties. *See, e.g., id.,* § 1808.21 (d) (2) ("Upon suppression of a record, each request for information about that record shall be authorized by the subject of the record or verified as legitimate by other investigative means ***by the department*** before the information is released.") (emphasis added). This statute does not create a general duty not to publish an image of a person's drivers license, without regard to its provenance, let alone a 30-year-old expired license containing a "residence address" at which plaintiff hasn't lived since well before he was sent to federal prison.

### 2. The publication of the Article cannot support an emotional distress claim

#### a) To support an emotional distress claim, the publication of the Article must be "extreme and outrageous conduct," such that it "exceeds all bounds of that usually tolerated in a civilized society."

In a bare-bones allegation devoid of factual specifics, Doe alleges that Roe's conduct was "outrageous" and thus actionable as intentional or negligent infliction of emotional distress. Complaint, ¶51-62. But Doe cannot show how publication of the Article was "outrageous" or could have caused Doe emotional distress.

For these emotional distress claims to survive, Doe must show that publication of the Borderland Beat Article was "extreme and outrageous conduct." *Sarver*, 813 F.3d at 906. "Conduct, to be 'outrageous," must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Trerice*, 209 Cal. App. 3d at 883. Although this presents an issue of fact, the court may determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Id.*

#### b) The publication of a 30 year old Driver's license with an outdated address cannot be "extreme and outrageous"

No reasonable factfinder could find the Borderland Beat Article to be "outrageous." Let us assume *arguendo* that the "emotional distress" here is Doe's fears for his own safety, as alleged in the

- 11 -
Roe 1 Special Motion to Strike 4:20-cv-06822 JD

motion to proceed under a pseudonym. D.E. 3. Whatever fears Doe may have with respect to his safety are related to his own longstanding and notorious criminal associations. But even if we assume that the Court may take cognizance of those fears, Doe cannot show that MX's publication of a 30-year-old driver's license is the cause of any such distress. That driver's license disclosed an address at which Doe has not lived since well before his stint in federal prison.

    *c)* ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

If, instead, the putative distress stems from the fact that the article ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Cf. Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1087 (1999) (filming a business lunch in a public place was, as a matter of law, "not so extreme and outrageous 'as to exceed all bounds of that usually tolerated in a civilized society'").

Contrary to Doe's contentions, the publication of information contained in a public document that the court subsequently "seals" is not illegal. A "sealing" order from a court simply has the effect of an order to the clerk not to release the document to members of the public who (subsequently) request it; it is not an order to nonparties as to what information they may publish or not publish.[8] Indeed, even a party is not bound to keep private information that has been placed under seal, if the party otherwise had access to the information, for example if the information had been placed in the

---

[8] Under Fed. R. Civ. P. 65(d), an injunction or restraining order "binds only the following who receive actual notice of it by personal service or otherwise (A) the parties; (B) the parties" officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

public docket prior to being sealed. *United States v. Dougherty*, 2014 U.S. Dist. LEXIS 101872 at *7-9 (E.D. Pa. July 23, 2014); *IBEW v. Am. Laundry Mach., Inc.*, 2008 U.S. Dist. LEXIS 106893 at *3-4 (S.D. Ohio Sep. 30, 2008).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████. *Lowe v. Hearst Communs., Inc.*, 414 F. Supp. 2d 669, 672-75 (W.D. Tex. 2006) (publication of information leaked from sealed court files was a matter of public concern and thus not actionable under either tort theory); *cf. Cross*, 197 Cal. App. 4th at 366, 378 (address of registered sex offender was of public interest).

In *Alvarado v. KOB-TV, L.L.C.,* the media published leaked information concerning certain undercover officers which had been sealed by the court on the ground that disclosure of the information would threaten their safety. *Id.,* 2005 U.S. Dist. LEXIS 45372, at *4-6 (D.N.M. Nov. 14, 2005). The court ruled that such pulication was not actionable as an invasion of privacy or intentional infliction of emotional distress. *Id.,*15-21.

### 3.    *The publication of the Article is protected by the First Amendment*

Moreover, even if it were otherwise actionable, ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

*Florida Star v. B. J. F.*, 491 U.S. 524, 538-89 (1989); *cf. Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 98 (1979) (statute prohibiting newspapers from publishing the names of juveniles named in indictments without court's permission violated the First Amendment); *Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679, 684 n. 1, 696, (2004) (First Amendment barred holding media liable for

reporting that plaintiff, 12 years earlier, had pled guilty to felony, even though plaintiff had obtained a certificate of rehabilitation).

To the extent that Borderland Beat was reporting on matters of public concern, the First Amendment would protect publication of such information even if the information had been independently leaked to it by a person that had itself violated the law in doing so. *Bartnicki v. Vopper*, 532 U.S. 514, 534-35 (2001); *see also Alvarado,* 2005 U.S. Dist. LEXIS 45372, at *15-21 (publication of leaked information regarding undercover officers protected by First Amendment).

████████████████████████████████████████
████████████████████████████████████████
██████████████████████

## *CONCLUSION*

The Anti-SLAPP statute was designed specifically to prevent lawsuits of this kind. ████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

Dated: May 19, 2021          \_\_\_\_\_\s\_____
                             Joshua Koltun
                             Attorney for Defendant Roe 1

- 14 -

Roe 1 Special Motion to Strike                                                4:20-cv-06822 JD