Joshua Koltun (Bar No. 173040)
Attorney
1 Sansome Street
Suite 3500, No. 500
San Francisco, California  94104
Telephone:  415.680.3410
Facsimile:  866.462.5959
joshua@koltunattorney.com

Attorney for Defendant Roe 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>             Plaintiff,<br><br>     v.<br><br>BORDERLAND BEAT, BLOGGER.COM, GOOGLE LLC, EL SIGLO DE TORREON, NOVENTO GRADOS, CODIGO ROJO NOTICIAS, INFOBAE, EL MANANA, REPORTE NIVEL UNO, OMNI, VALOR TAMAULIPECO REFORMA, EL NORTE, NOTICIAS PV NAYARIT, VANGUARDIA, and ROES 1-50, INCLUSIVE,<br><br>             Defendants. | Case No.: 4:20-cv-06822-JD<br><br>DEFENDANT ROE 1's MOTION FOR ATTORNEY FEES UNDER C.C.P 425.16 (c)<br><br>Date:  July 29, 2021<br>Time:  10:00 am<br>Court:  Webinar/Zoom<br>Judge:  The Hon. James Donato<br><br>*Filed Herewith:*<br><br>Declaration of Joshua Koltun<br>[Proposed] Order |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. ii

MOTION ........................................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

SUMMARY ....................................................................................................................................... 1

BACKGROUND ............................................................................................................................... 2

Argument ........................................................................................................................................... 6

I. Where, as here, a plaintiff voluntarily dismisses the case while an Anti-SLAPP motion is pending, a rebuttable presumption arises that defendant is the "prevailing party" entitled to attorney fees ................................................................................................................................ 6

II. Plaintiff Doe failed to achieve its objectives in this litigation and thus cannot rebut the presumption that Defendant Roe is the prevailing party ............................................................ 7

III. The amount of the requested award is reasonable under the "lodestar" method ...................... 8

    A. The hourly rate sought here -- $500 an hour -- is reasonable in light of the prevailing rates for similar work in the local legal market. ........................................................................... 8

    B. The hours for which counsel seeks an award are reasonable ................................................ 9

    C. Counsel should be awarded the requested multiplier because he agreed on an urgent basis to take on this case pro bono .................................................................................................. 10

CONCLUSION ................................................................................................................................ 11

*Joshua Koltun* ATTORNEY

Joshua Koltun ATTORNEY

## *TABLE OF AUTHORITIES*

### Cases

*Amaral v. Cintas Corp*, 163 Cal. App. 4th 1157, 1217-18 (2008)........................................................10
*Art of Living Foundation. v. Does*, 2012 U.S. Dist. LEXIS 61582, at *74-77 (N.D. Cal. May 1, 2012). ........................................................................................................................7
*Art of Living Foundation v Does*, 2011 U.S. Dist. LEXIS 129836; (N.D. Cal., November 9, 2011) .....4
*Bank Julius Baer & Co. v. WikiLeaks*, 535 F. Supp. 2d 980 (N.D. Cal. 2008) ......................................4
*City of Oakland v. Oakland Raiders*, 203 Cal.App. 3d 78, 82 (1988)....................................................8
*Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107-08 (1998)...............................................................6, 7
*Engel v. Worthington*, 60 Cal. App. 4th 628, 636 (1997 ..........................................................................9
*Garrison v. Ringgold*, 2019 U.S. Dist. LEXIS 190279, at *4-7 (S.D. Cal. Nov. 1, 2019)......................7
*Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 397 (2005). ....................................9
*Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-1132, 1136 (2001)....................................................8, 9, 10
*League of United Latin Am. Citizens Inc. v. Eureste*, 2014 U.S. Dist. LEXIS 152765, at *3-4 (N.D. Cal. Oct. 28, 2014)..........................................................................................................................8
*Nicosia v. De Rooy*, 72 F.Supp. 2d 1093 (N.D. Cal. 1999). .....................................................................4
*Peak Health Ctr. v. Dorfman*, 2020 U.S. Dist. LEXIS 106145, at *10 (N.D. Cal. June 16, 2020).........9
*Pellegrino v. Robert Half Internat., Inc.*, 182 Cal. App. 4th 278, 292-93, (2010) (same; upholding multiplier of 1.75). ..........................................................................................................................11
*PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1094-95 (2000). .........................................................8
*Primacy Eng'g, Inc. v. ITE, Inc.*, 2019 U.S. Dist. LEXIS 79019, at *10-11 (S.D. Cal. May 8, 2019)....7
*Ryan v. Editions Ltd. W., Inc.*, 2007 U.S. Dist. LEXIS 72895, at *7-8 (N.D. Cal. Sep. 21, 2007) .........7
*Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) ...............................................................................7
*Signature Mgmt Team v. Doe*, 2018 US Dist. Lexis 141459 (ED Mich. August 21, 2018)....................4
*Signature Mgmt. Team, v. Doe*, 876 F.3d 831 (6th Cir. 2017)..............................................................4

### Statutes

California Code of Civil Procedure section ("Section") 425.16(c) ..........................................1, 6, 8, 10

## MOTION

TO PLAINTIFF JOHN DOE AND HIS COUNSEL OF RECORD: PLEASE TAKE NOTICE that on July 29, 2021 at 10:00 a.m., or as soon thereafter as counsel may be heard, by Zoom/Webinar as indicated on the Court's website or as otherwise ordered by the Court, defendant Roe 1 ("Roe") will move the Court under California Code of Civil Procedure section ("Section") 425.16(c) for an order awarding attorney fees.. This motion is based upon the Memorandum of Points and Authorities that follows and on the Declaration of Joshua Koltun, all the pleadings, records and files in this case, and on such further material and argument as may be submitted at or before the hearing on this motion.

Roe respectfully seeks an order awarding Roe attorney fees in the amount of $35,195 and such additional amounts as may be appropriate in light of such further work as Roe's counsel must incur in seeking this award.

## MEMORANDUM OF POINTS AND AUTHORITIES

### SUMMARY

Borderland Beat is a news blog staffed by anonymous contributors that reports on the activities of Mexican drug cartels. Plaintiff Doe sued Borderland Beat and numerous foreign news sites, seeking hundreds of thousands of dollars in damages. In addition to the financial burden, the risk that the identities of Borderland Beat's contributors might be disclosed posed deadly risks. Borderland Beat sought the assistance of the Reporters Committee for Freedom of the Press, which arranged for Joshua Koltun, an experienced First Amendment attorney with particular experience protecting the rights of speakers to remain anonymous, to defend Borderland Beat.

After meeting and conferring with Doe's counsel and unsuccessfully seeking to persuade him to withdraw this case, Koltun filed an Anti-SLAPP motion, together with a motion for judgment on the pleadings and a motion to vacate this Court's order barring Borderland Beat from disclosing the identity of Doe. Doe responded immediately by moving to dismiss the case against Roes 1 to 25, in other words, all defendants related to Borderland Beat ("Borderland Beat Defendants).

As a matter of law, Roe is entitled to attorney fees under Section 425.16(c). When a plaintiff dismisses an action while an Anti-SLAPP motion is pending, a rebuttable presumption arises that the

defendant is the prevailing party. The presumption can only be rebutted upon a showing that plaintiff had accomplished the objectives of the litigation, which is not the case here. The Court should not consider any contention that the Anti-SLAPP motion was without merit.

A prevailing defendant is entitled to a mandatory award of reasonable attorney fees. The undersigned counsel has requested a fee award calculated under the "lodestar" formula approved by the California Supreme Court. This request includes all work performed on the Anti-SLAPP motion or common issues of fact and law, and includes a multiplier to recognize the contingent risk taken in representing Borderland Beat *pro bono.*

## *BACKGROUND*

***Relevant Procedural Background***. Plaintiff Doe filed this lawsuit against numerous media defendants, including numerous foreign (Spanish-language) newspapers or news websites, and Borderland Beat, an English-language blog, staffed by anonymous contributors, that reports on the activities of Mexican drug cartels.

Borderland Beat sought the assistance of a nonprofit organization, the Reporter Committee for Freedom of the Press ("Reporters Committee"). Koltun Decl., ¶1. The primary concern for the members of Borderland Beat, and for the Reporters Committee, was the risk that the identity of Borderland Beat's anonymous contributors might be discovered by Doe. *Id.* Mexican journalists live in well-founded fear for their safety for reporting on the activities of Mexican Drug Cartels. Roe Declaration, D.E. 32-16, Exhibits 7-11 (analysis of Committee to Protect Journalists of risks in Mexico).

The Reporters Committee contacted the undersigned counsel, Joshua Koltun, with whom it had successfully worked in the past, and asked him if he would be willing to take on this case. *Id.* One reason the Reporters Committee sought Koltun's assistance is that he has considerable experience defending the right of anonymous speakers to remain anonymous in the face of litigation. *Id.*

Although Koltun, a solo practitioner, was facing imminent discovery deadlines in a case in the Central District that would involve elaborate cross-motions for summary judgment, and potentially, a

trial, he agreed to take on the case in light of the life-or-death stakes faced by Borderland Beat's anonymous contributors. *Id., ¶* 2.

Koltun appeared on behalf of Defendant Roe, who sought to protect all Borderland-Beat related defendants (Roes 2 – 25, hereinafter "Borderland Beat Defendants"). *Id.,* Koltun agreed to represent Roe *pro bono,* subject, however, to being paid any fee award that Roe might obtain. *Id* Thus although this motion is presented nominally on behalf of Roe, the underlying reality is that it is for Koltun's benefit. *Id.*

Koltun met and conferred with Doe's counsel, in an effort to persuade him to drop the case, and failing that, to narrow the relevant disputes of fact and law for the Court. *Id.,* ¶3. The results of these conferences were reflected in the Joint Rule 26(f) Report filed with this Court on January 19. [D.E. 19]. *Id.*

Koltun informed Doe's counsel that if he did not withdraw the action, Koltun intended to file early dispositive motions and a motion to vacate the *ex parte* Order by which this Court (Magistrate Judge Westmore), had permitted Doe to proceed by pseudonym, and had ordered defendants not to publish Doe's identity or identifying information. (DE 6, "Psuedonym Order."). *Id.,* Joint Report [DE 19] at 4. Shortly thereafter, Koltun began preparing an Anti-SLAPP motion, a motion for judgment on the pleadings (as to the federal claim), and a motion to vacate the Pseudonym Order, with a view toward filing them prior to the Court holding its first Case Management Conference in February. *Id.*

However, in light of plaintiff's ongoing efforts to serve the other newspaper defendants by the Hague convention, this Court continued the case management conference until June 3. *Id.,* ¶. In light of that delay, Koltun suspended some work on the foregoing motions in order to focus his efforts on the summary judgment motions, and then trial preparations, in his other case. *Id.* After that case settled, and Koltun immediately turned to completing the foregoing motions. *Id.*

Koltun filed the Anti-SLAPP motion, motion for judgment on the pleadings, and motion to vacate the Pseudonym Order on May 19, under seal pursuant to the procedure set forth in Local Rule 79-5. DE 26, 31.

Several days later, Doe moved to voluntarily dismiss this action as to Roe 1 and all Borderland Beat defendants. DE 30. On June 1, this Court dismissed this action as to Roe 1 and the Borderland Beat defendants without prejudice.

***Koltun's Legal Practice.***  Koltun is a solo practitioner. Koltun Decl., ¶ 6. He does not employ any associates, paralegals, or assistants.  Prior to starting his own practice in 2007, he was a partner at the San Francisco firm Steinhart & Falconer, and then, through mergers, at the firm that ultimately became DLA Piper. *Id.* In 2007, his last year at DLA Piper, his standard hourly rate was $530 an hour. *Id.* Had he continued to work at DLA Piper or another large firm, his billing rate would likely now be considerably higher than that. *Id.*

He has extensive experience representing media companies and individuals in defamation and other matters involving the First Amendment. *Id*. His experience defending individuals who have published their own materials on the internet dates back to the very outset of the phenomenon – before the term "blogger" had even been invented. *Id., see Nicosia v. De Rooy*, 72 F.Supp. 2d 1093 (N.D. Cal. 1999).

He is particularly well-known for his success in protecting the rights of speakers on the internet to remain anonymous.  *Id., see, e.g.,* S*ignature Mgmt. Team, L.L.C. v. Doe,* 876 F.3d 831 (6th Cir. 2017), *Signature Management Team v. Doe,* 2018 US Dist. Lexis 141459 (ED Mich. August 21, 2018); *Art of Living Foundation v Does,* 2011 U.S. Dist. LEXIS 129836; (N.D. Cal., November 9, 2011), November 9, 2011; *see also Bank Julius Baer & Co. v. WikiLeaks, 53*5 F. Supp. 2d 980 (N.D. Cal. 2008) (denying injunction against website that enables anonymous leaks).

In opening his solo practice, Koltun sought to be able continue to devote a substantial portion of his time to work on First Amendment issues during a time of great turmoil for the media industry, as well as great ferment in First Amendment law. Koltun Decl., *¶* 7. Since opening his own practice, his media clients have included Advance Magazine Publishers (*The New Yorker Magazine, Vogue Magazine)* Crain Publications (*AutoWeek*), The Guardian, CNN, Jigsaw Production (Alex Gibney, documentary film producer), Livingly Media, as well as individual activists, journalists, and bloggers, as well as officers of the San Francisco and Richmond chapters of the NAACP.  (More detailed information about Koltun's practice is at www.koltunattorney.com.)

***Koltun's Ordinary Rates and Pro Bono Practice.*** For the past several years, Koltun's standard billing rate –the actual rate at which he generally bills commercial clients – has been $500 an hour, although he has occasionally discounted his rates on matters of particular First Amendment interest and/or based on the client's ability to pay. *Id, ¶* 8.

Koltun represents many of his individual and nonprofit clients in First Amendment matters *pro-bono* or partially *pro-bono,* as he did here. *Id.* The extent to which he is able to afford to continue his substantial *pro bono* practice – including his frequent work in the highly specialized area of defending the right to speak anonymously – depends in large part on his ability to obtain attorney fee awards for his work. *Id.*

***The work for which fees are requested.*** The work for which fees are requested includes all work directly on the Anti-SLAPP motion, together with work that was intertwined with the Anti-SLAPP motion because of common issues of fact or law. *Id., ¶* 9. Such issues included:

- Factual research on the underlying media stories giving rise to the cause of action, the facts underlying those stories, the sources of information on which those stories had relied, and the chronology and status of efforts to place certain information under seal;
- Meeting and conferring with Doe's counsel in an effort to persuade him to drop the case, or failing that, to narrow the issues of fact and law before the Court, *see* Joint Report (DE 19) at 1-4.
- Legal research on meaning of "motor vehicle record" under the DPPA and corresponding California Vehicle Code;
- Legal research on power of courts to order sealing, the legal effect thereof, and relevant First Amendment limitations on liability for publishing matters that were disclosed prior to sealing;
- Procedural research and work (including paralegal work) involved in filing the relevant motions under seal, as such was necessary for all motions.

Koltun has, however, excluded from this fee request work that applied only to the motion for judgment on the pleadings or the motion to vacate, including research on matters that applied solely to such motions, and work directly drafting those motions. *Id.*

He asks to be awarded fees for 45.1 hours he actually spent on this case. *Id.* There is a small amount of work he performed which he considers to be of a paralegal nature, to which he assigns a reduced rate of $150 an hour. *Id.* Detailed information is provided in the Koltun Declaration, Exh. A.

He requests that the foregoing "lodestar" amount be multiplied by 1.5, to compensate for the contingent risk he undertook, and the burden on him of taking this case on an urgent basis when he had another matter to attend to. *Id., ¶* 10.

He also requests to be paid for 6.1 hours working on this attorney fee motion to date, and intends to request additional fees for such other time and expenses as may be incurred subsequently. *Id.*. He does not request a multiplier for hours spent on the fee request. *Id*

The total amount requested is thus $35,195, as set forth on the following table.

| Work | Hours | Rate | Amount |
|---|---|---|---|
| Pre-Dismissal Attorney | 41.9 | 500 | 20950 |
| Pre-Dismissal "Paralegal" | 3.2 | 150 | 480 |
| Subtotal | | | 21430 |
| (Apply Multiplier) | | | 32145 |
| Fee Request | 6.1 | 500 | 3050 |
| TOTAL | | | 35195 |

The undersigned respectfully urges that this requested amount is appropriate, for the reasons discussed below.

### *Argument*

**I.     Where, as here, a plaintiff voluntarily dismisses the case while an Anti-SLAPP motion is pending, a rebuttable presumption arises that defendant is the "prevailing party" entitled to attorney fees**

"[W]here the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under Code of Civil Procedure section 425.16, subdivision (c)." *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107-08 (1998).

> Otherwise, SLAPP plaintiffs could achieve most of their objective with little risk--by filing a SLAPP suit, forcing the defendant to incur the effort and expense of preparing a special motion to strike, then dismissing the action without prejudice. The specter of the action being refiled (at least until the statute of limitations had run) would continue to have a significant chilling effect on the defendant's exercise of its First Amendment rights. At that point, the plaintiff would have accomplished all the wrongdoing that triggers the defendant's eligibility for attorney's fees, but the defendant would be cheated of redress.

*Id.* at 106-07. Federal courts follow the rule set forth in *Coltrain*, that the voluntary dismissal raises a presumption that the defendant is the prevailing party, which can be rebutted only upon a "pragmatic" showing, turning on "which side achieved their objectives." *Primacy Eng'g, Inc. v. ITE, Inc.*, 2019 U.S. Dist. LEXIS 79019, at *10-11 (S.D. Cal. May 8, 2019); *Art of Living Found. v. Doe,* 2012 U.S. Dist. LEXIS 61582, at *74-77 (N.D. Cal. May 1, 2012).

Consequently, the Court should not "waste scarce judicial resources to determine who would have won a voluntarily dismissed action." *Ryan v. Editions Ltd. W., Inc.*, 2007 U.S. Dist. LEXIS 72895, at *7-8 (N.D. Cal. Sep. 21, 2007) Thus plaintiff's contentions that the Anti-SLAPP motion was without merit are not relevant.[1]

## II. *Plaintiff Doe failed to achieve its objectives in this litigation and thus cannot rebut the presumption that Defendant Roe is the prevailing party*

Plaintiff Doe sought damages in this case in the amounts of $25,000 for pain and suffering, $100,000 for emotional distress, fear, terror, anxiety, humiliation, a loss of sense of security, dignity, pride, and invasion of privacy, punitive damages of $100,000, and attorney fees and litigation costs in the amount of $20,000. Joint Report, DE 19, at 5. He certainly did not achieve that objective.

Nor can plaintiff show any other "pragmatic reason" that would rebut the presumption that the Borderland Beat defendants were the prevailing parties. *See Garrison v. Ringgold*, 2019 U.S. Dist. LEXIS 190279, at *4-7 (S.D. Cal. Nov. 1, 2019) (plaintiff's claim that he is homeless is insufficient to rebut presumption that defendant is the prevailing party).

The purported reason Doe offers for why he chose to dismiss the actions against the Borderland Beat defendants makes no sense. According to Doe, "the reason for the request for dismissal is not the merits of the motions, but because Roe 1 seeks to file unredacted copies of the very documents at issue in this matter that originally breached Doe's privacy." DE 34 at 6:17-20. But Roe did not file unredacted copies of the pleadings in open court; she submitted the documents under seal pursuant to this Court's procedures. DE 26, 31. Those procedures provided Doe with an

---

[1] In any case his assertion that the Anti-SLAPP motion was untimely [DE 34 at 6:23-34] is mistaken. The procedural time limits of Section 425.16 do not apply in federal court. *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016).

1  opportunity to make whatever redactions he contended were necessary to protect his privacy.  L.R. 79-
2  5 (e).  And indeed, Doe (reluctantly) complied with this Court's procedures and filed redacted
3  versions of Roe's briefs.  DE 32, 35.

### III.  The amount of the requested award is reasonable under the "lodestar" method

State law governs attorney's fees awards based on state fee-shifting laws, like California's anti-SLAPP statute.  *League of United Latin Am. Citizens Inc. v. Eureste*, 2014 U.S. Dist. LEXIS 152765, at *3-4 (N.D. Cal. Oct. 28, 2014).  A court assessing the amount of mandatory attorney fees to be awarded under Section 425.16 (c) must do so by applying the "lodestar" method that has been approved in many other contexts in which statutory attorney's fees are awarded. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-1132, 1136 (2001).

#### A.  The hourly rate sought here -- $500 an hour --  is reasonable in light of the prevailing rates for similar work in the local legal market.

The first step in the lodestar method is to determine the "prevailing hourly rates" in the relevant legal community for "comparable legal services." *Ketchum,* 24 Cal.4th at 1132. That amount is determined based on what is "objectively" reasonable, not by what counsel has actually charged in the case. *Id.* at 1134 (*citing PLCM Group, Inc. v. Drexler,* 22 Cal. 4th 1084, 1094-95 (2000). For example, where the prevailing attorneys are in-house counsel paid on salary, the court may simply look to the prevailing rates that such counsel might charge in the marketplace for comparable work. *PLCM Group,* 22 Cal. 4th at 1094-95; *cf. City of Oakland v. Oakland Raiders,* 203 Cal.App. 3d 78, 82 (1988) (where outside counsel took on the case on an urgent basis, with only an oral understanding that he would be paid "reasonable value of the services," the court may determine that a reasonable rate for counsel's services is that which is charged by "top law firms in the Bay Area.").

Here, Counsel was, until 2007, a partner at a top law firm in the Bay Area, and the $530 billing rate he customarily charged at that time was well within the market for someone of comparable experience.  Had he remained at a top law firm for the last fourteen years his billing rate would certainly be considerably higher now.  Thus although counsel would be entitled to seek a higher rate, he is only seeking the rate he actually charges in the marketplace for his work.

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Peak Health Ctr. v. Dorfman*, 2020 U.S. Dist. LEXIS 106145, at *10 (N.D. Cal. June 16, 2020). In *Peak Health*, this Court, after reviewing other fee decisions in this Court, upheld as reasonable attorney rates in this judicial district $725 an hour and $540 an hour, for two media attorneys, the more senior of whose experience is slightly more than that of Koltun.[2] *Id.* at 10, 12-13.

### B. The hours for which counsel seeks an award are reasonable

"[A]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent.*" *Ketchum*, 24 Cal.4th at 1133 (emphasis in the original). Where the Court has before it the verified time records of counsel, these are presumed to be credible, and the court abuses its discretion if it reduces those hours without a careful effort to ensure that the attorney is fully compensated for the services provided. *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 397 (2005). To deny counsel compensation for the time he expended vindicating his Defendants' constitutional rights is would be "tantamount to finding the fees were unreasonable per se, some of his efforts unwarranted, or his goal unworthy." *Engel v. Worthington*, 60 Cal. App. 4th 628, 636 (1997).

"All expenses incurred on common issues of fact and law qualify for an award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned." *Kearney v. Foley & Lardner,* 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008).

Counsel should also be compensated for time reasonably spent on a fee petition. *Ketchum*, 24 Cal.4th at 1141. Time which counsel spends seeking to settle the case are also compensable. *Fleming v. Kemper Nat'l Servs.,* 373 F. Supp. 2d 1000, 1009 (N.D. Cal. 2005).

Here, the work for which an award is sought is limited to time spent researching factual and legal issues relevant to the Anti-SLAPP motion, drafting that motion, and related efforts to settle the

---

[2] Robert Gutierrez ($725/hour) is "of counsel" at the Ballard Spahr firm, and has four more years of legal experience than Koltun. Matthew Cate ($540/hr) is an associate with 20 years less legal experience than Koltun. See Robert S. Gutierrez | People | Ballard Spahr; Matthew Cate | People | Ballard Spahr.

case or otherwise narrow the issues for this Court. Koltun Decl., ¶ 8, 9, Exh. A. Such work is appropriately included in the lodestar calculation.

### C. Counsel should be awarded the requested multiplier because he agreed on an urgent basis to take on this case pro bono

The enhancement of fees under Section 425.16 serves the legislative aim of strengthening enforcement of certain constitutional rights, including freedom of speech, by placing the financial burden of defending against SLAPP actions on the "party abusing the judicial system, and by encouraging private representation, including instances when a litigant cannot afford fees." *Ketchum*, 24 Cal. 4th at 1136. Appropriate matters to consider in determining whether to award an enhancement include:

> (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." [citation omitted] The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

*Id.* at 1131-32. "The fee-shifting provision also encourages private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement." *Id.* Certainly where counsel has agreed to represent a defendant *pro bono*, and relies solely on the possibility of a fee award for compensation, that contingent arrangement should be considered in awarding an enhancement. *Ketchum,* 24 Cal.4th at 1137; *see Amaral v. Cintas Corp*, 163 Cal. App. 4th 1157, 1217-18 (2008) (upholding multiplier of 1.65 for contingent risk; rejecting argument that counsel must show it had turned down work to take on case); *Pellegrino v. Robert Half Internat., Inc.*, 182 Cal. App. 4th 278, 292-93, (2010) (same; upholding multiplier of 1.75).

Here, a solo practitioner facing a burdensome schedule in another case, took on this case on an urgent basis and did so *pro bono,* in part because his specialized experience rendered him particularly suitable to mounting the necessary defense of Borderland Beat's First Amendment rights. The modest multiplier requested is appropriate.

## *CONCLUSION*

Counsel responded to the urgent request of the Reporters Committee for Freedom of the Press to represent Roe to preserve Borderland Beat's ability to continue to do their important work of anonymously reporting on issues of great public interest. Having sought hundreds of thousands of dollars from Borderland Beat, Doe swiftly dismissed this action in response to the Anti-SLAPP motion, effectively conceding that his case had not merit. The mandatory attorney fees provision of the Anti-SLAPP statute, and in particular the "lodestar" enhancement for contingency work, was specifically designed to help ensure that attorneys such as the undersigned can continue to be available to vindicate the rights of speakers to be free of the sort of legal harassment pursued by Doe in this case.

For these reasons, Roe and the undersigned counsel respectfully request that the amounts calculated above be awarded, and such additional amounts as may be appropriate in light of such further work as may be incurred in seeking this fee award.

Dated: June 15, 2021

\_\_\_\_\\s\_____
Joshua Koltun
Attorney for Defendant Roe 1